UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

MICHAEL SHANE REID                                                        PLAINTIFF

v.                                            CIVIL ACTION NO. 1:24-CV-P44-CRS

STEPHEN HARMON et al.                                                    DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael Shane Reid, a prisoner proceeding *pro se*, initiated this 42 U.S.C. § 1983 action.  The complaint is before the Court for screening pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).  For the following reasons, some claims will be dismissed while others will proceed.

## I. STATEMENT OF CLAIMS

Plaintiff, a prisoner at the Warren County Regional Jail (WCRJ), sues WCRJ Jailer Stephen Harmon; Comprehensive Correctional Care (CCC), the medical contractor at WCRJ; and CCC Head Nurse Nora Janes.  He sues Defendants Harmon and Janes in their individual and official capacities.

According to the complaint, when Plaintiff was booked into WCRJ in February 2023, he had two masses in his lower abdomen, which he had been told could be a hernia.  He alleges that consequently he asked for a lower bunk but was denied until July 2023 by Defendants CCC and Harmon despite the masses increasing in size and a June 2023 diagnosis of two hernias.

Plaintiff states that he underwent surgery for his hernias on September 15, after which he was handcuffed, chained at the waist, and shackled to be escorted from the hospital per WCRJ policy.  According to Plaintiff, rather than taking him by wheelchair to the van, he was made to

walk about 100 feet from the hospital's front door to the van; as he was walking, his feet tangled in the shackles, and he fell.  Plaintiff alleges that he told the deputy that he felt "something wrong" when he fell, but rather than take him back to the hospital the deputy took him back to WCRJ.

Plaintiff states that when he arrived, he "begged jail staff to get medical to give me something for pain," but he was told that there was nothing they could do.  Instead, Plaintiff asserts, he was made to stand in the observation room for three hours before being taken to the medical dorm, where he was given two mats and made to sleep on the floor.  He states that he was in much pain getting up and down on the floor and begged for help.  According to the complaint, he was given "something" for pain at 11:00 pm, which did not help.  The next morning, Plaintiff showed a deputy that his genitalia was grossly swollen, and he was "purple and black from [his] lower stomach to [his] upper thighs."  At that point, Plaintiff states he was rushed to the ER and given an ultrasound, which showed that his fall and getting up from the floor had caused trauma.  He states that the ER doctor prescribed pain medication and he was taken back to WCRJ.

According to Plaintiff, the pain medication ran out after three days.  He alleges that the pain was unbearable and that he asked Defendant Janes for pain medicine, but she refused.  Plaintiff states that, despite the ER doctor's recommendation that he be kept in medical observation for six to eight weeks, after four weeks and three days Defendant Janes placed him in "population," where he was required to use the stairs, "clean daily, and stand multiple times a day per WCRJ policy."

Plaintiff states that he suffered terrible pain that night after his return to general population but was only given a sick form by the nurse.  He states that the next day an MRI was ordered, and he was given Tylenol three times per day.  Plaintiff alleges that the MRI showed that the internal

stitches had torn due to the physical activity; when he saw the surgeon some weeks later, the surgeon explained that his body would eventually heal itself.

Plaintiff requests damages, a federal investigation, and the termination of Defendant Janes.

## II. ANALYSIS

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the action, if the Court determines that it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1) and (2). When determining whether a plaintiff has stated a claim upon which relief may be granted, the Court must construe the complaint in a light most favorable to the plaintiff and accept all the factual allegations as true. *Prater v. City of Burnside, Ky.*, 289 F.3d 417, 424 (6th Cir. 2002). While a reviewing court must liberally construe *pro se* pleadings, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam), to avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### A. Official-capacity claims and claims against Defendant CCC

Plaintiff's official-capacity claims against Defendants Harmon and Janes are actually against their employers, which are Warren County and Defendant CCC, respectively. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . 'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Defendant CCC is a private medical provider which contracts with WCRJ to provide medical services to inmates. "A private entity . . . that contracts to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function." *See, e.g.*, *Winkler v. Madison Cnty.*, 893 F.3d 877, 904 (6th Cir. 2018) (citing *Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005)). Whether such a private entity should be held liable for a constitutional violation is analyzed the same way as a determination that a municipality should be held liable. When a § 1983 claim is made against a municipality, the Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality as an entity is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992).

"[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). The Court assumes for purposes of this initial review that Plaintiff's masses, later diagnosed as hernias requiring surgery, were a serious medical need.

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691. To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his

4

particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  The policy or custom "must be 'the moving force of the constitutional violation' to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

Here, reading Plaintiff's complaint liberally, as the Court is required to do, *see Boag*, 454 U.S. at 365, the Court finds that Plaintiff has alleged a custom or policy of Warren County of requiring Plaintiff to be shackled when being transported from the hospital and to require Plaintiff to clean, stand, and use stairs once he was returned to general population despite his recent surgery.

Plaintiff alleges he asked for a lower bunk but was denied by Defendant CCC but does not allege that it was a policy decision to do so.  As Plaintiff does not allege that a Defendant CCC policy or custom was the moving force behind any of his alleged constitutional deprivations, the Court will dismiss Plaintiff's claim against CCC.

### B. Individual-capacity claims against Defendants Harmon and Janes

Plaintiff alleges that his request for a lower bunk was denied by Defendant Harmon until July 2023 even though his masses increased in size and he was diagnosed with two hernias.

Plaintiff also alleges that Defendant Janes refused his request for pain medicine, despite his unbearable pain and that despite the ER doctor's recommendation that he be kept in medical observation for six to eight weeks, after barely more than four weeks Defendant Janes placed him in "population."

The Court will allow Plaintiff's individual-capacity claims against Defendant Harmon for denying him a lower bunk and against Defendant Janes for refusing him pain medication and releasing him to general population too soon to continue.  *See, e.g.*, *Jackson v. Davids*, No. 1:21-

CV-1060, 2022 WL 537852, at *7 (W.D. Mich. Feb. 23, 2022) ("Although not every hernia is a "serious medical need," Plaintiff's description of the pain and the response of the doctor . . . supports the inference that Plaintiff's hernia was a serious medical need."); *Fields v. Trinity Food Serv.*, No. 17-1190-JDT-CGC, 2019 WL 5268565, at *9 (W.D. Tenn. Oct. 17, 2019) ("Taking his allegations as true, Fields's untreated hernia constitutes an objectively serious medical need."); *Chambers v. Correct Care Sol.*, No. 3:15-CV-01021, 2015 WL 5673007, at *3 (M.D. Tenn. Sept. 25, 2015) ("It is well established that pain can be a "sufficiently serious" medical need for purposes of a deliberate indifference claim.") (citing cases).

### C. Requests for a federal investigation and termination of Defendant Janes

Plaintiff's requests for a federal investigation and the termination of Defendant Janes will be dismissed. "[P]laintiff is not entitled under any theory to a federal investigation[.]" *McGee v. Gay*, No. 3:21-CV-00391, 2021 WL 4552958, at *5 (M.D. Tenn. Oct. 5, 2021) (citing *Peek v. Mitchell*, 419 F.2d 575, 577 (6th Cir. 1970)); *see also Violett v. King*, No. 3:19-CV-P524-CHB, 2019 WL 6709391, at *3 (W.D. Ky. Dec. 9, 2019) ("[A] party cannot seek to compel an investigation of another party under § 1983."). Nor is Plaintiff's requested relief of having Defendant Janes fired available in this § 1983 action. *See, e.g., Theriot v. Woods*, No. 2:09-cv-199, 2010 WL 623684 at *4 (W.D. Mich. Feb. 18, 2010) (holding that requesting injunctive relief in the form of ordering the firing of defendants is "not available under 42 U.S.C. § 1983" and that the court "has no authority under 42 U.S.C. § 1983 to . . . terminate the employment of [the defendants]"); *see also Ross v. Reed*, No. 1:13-cv-143, 2013 WL 1326947 at *3 (S.D. Ohio Mar. 5, 2013) ("The Court has no authority under § 1983 to direct the . . . police department to initiate any disciplinary proceedings against its employees.").

### D. Amendment of complaint

As for Plaintiff's allegations that after his surgery and fall on the way to the van he "begged jail staff to get medical to give me something for pain" but was told that there was nothing they could do; being made to stand for three hours; and being required to sleep on the floor, Plaintiff does not identify a custom or policy of either Warren County or Defendant CCC or the person(s) responsible for the alleged failure to treat his pain or provide a bed. The Court, however, will allow Plaintiff to amend to identify a custom or policy or the person(s) responsible for these alleged constitutional violations. *See, e.g.*, *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[U]nder Rule 15(a) of the Federal Rules of Civil Procedure, a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA [Prison Litigation Reform Act].").

### III. CONCLUSION AND ORDER

For the following reasons,

**IT IS ORDERED** that Plaintiff's claims against Defendant CCC are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted within the meaning of 28 U.S.C. § 1915A(b)(1).

**IT IS FURTHER ORDERED** that **within 30 days** of entry of this Order Plaintiff may file an amended complaint identifying a custom or policy of either Warren County or CCC or the person(s) responsible for the alleged failure to treat his pain or provide a bed in their individual capacities.

The Court **DIRECTS** the Clerk of Court to place this case number and the words "Amended" on a § 1983 complaint form and send it to Plaintiff for his use should he wish to file an amended complaint as well as four summons forms should Plaintiff wish to add Defendant(s).

Once Plaintiff's amended complaint, should he file one, is reviewed under § 1915A or 30 days have passed without Plaintiff filing an amended complaint, the Court will enter a separate Service and Scheduling Order to govern the development of the remaining claims.

Date: June 28, 2024

Charles R. Simpson III, Senior Judge
United States District Court

cc:     Plaintiff, *pro se*
        Defendants
4411.009